IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:04CV8-03-MU

| | | |
|---|---|---|
| JEREMIAH ROYSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| BOYD BENNETT et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | |

**THIS MATTER** is before this Court on Defendant Dr. Turpin's Motion to Dismiss and

Defendants' Motion for Summary Judgment (Document Numbers 58 and 68) filed on October 10

and 24, 2005 respectively and Defendant Turpin's Motion for Enlargement of Time (Document

No. 74) filed on December 6, 2005.  For the reasons stated herein, Defendant Turpin's Motion to

Dismiss is granted, Defendants' Motion for Summary Judgment is also granted and Defendant

Turpin's Motion for an Enlargement of Time is denied as moot..

On January 9, 2004, Plaintiff filed a pro se Complaint pursuant to 42 U.S.C. §1983

(Document Number 1), alleging several constitutional violations, including deliberate indifference

to his serious medical needs, intentional destruction of his inmate medical records and other

personal property, unsanitary conditions, racial and religious discrimination, retaliation and

medical co-payments.  Plaintiff named as Defendants Boyd Bennett, Director of the Division of

Prisons for the North Carolina Department of Correction ("DOC"); Dennis Rowland, Special

Assistant Director of the Division of Prisons; Sidney Harkleroad, Superintendent at Marion

1

Correctional ("Marion"); Donna Biddix, a Correctional Sergeant at Marion; Mary Brown, a Correctional Officer at Marion; Vickie Poteat, a Correctional Officer at Marion; Jeffrey Brendle, a Correctional Officer at Marion; Gregory Johnson, a Correctional Officer at Marion; Robert MacKinnon, a Correctional Officer at Marion; Barton Cook, as a Correctional Officer at Marion; Wesley Corn, a Correctional Sergeant at Marion; David Cothron, a Unit Manager at Marion; Angela Twitty, a Unity Manager at Marion, Olin Ray Patrick, an Assistant Unit Manager at Marion; Samuel Dotson, a Unit Manager at Marion; Curtis Sturgill, an Assistant Unit Manager at Marion; Bryon Duncan, a Correctional Sergeant at Marion; Merle Hanna, a Correctional Officer at Marion; Kristal Randolph, a Correctional Officer at Marion, Terry Owens, a Correctional Officer at Marion; Michele Hughes, a Correctional Officer at Marion; Jeffrey McGee, a Correctional Officer at Marion; Sue Medford, a Nursing Supervisor at Marion; Theodis Beck, the Secretary of the DOC; David F. Bobo, a Disciplinary Hearing Officer; and Dr. James Turpin, a staff physician on contract with the DOC. By Order dated October 28, 2005, the Court granted Plaintiff's request to voluntarily dismiss Defendants Dotson, Sturgill, Duncan, Hanna, Randolph, Owens, Hughes, and McGee. On February 3, 2004, Plaintiff filed an Amended Complaint alleging that Defendants' disciplinary decision and penalties violates Plaintiff's first, eighth and fourteenth amendment rights, and the policy of requiring only one medical complaint per medical visit violates the eighth amendment.

Defendant Turpin filed a Motion to Dismiss based on failure to exhaust on July 2, 2004. The remaining Defendants filed a motion to dismiss on July 1, 2004. On September 13, 2005, this Court denied Plaintiff's Motion for a Preliminary Injunction; and denied Defendants' Motions to Dismiss based on failure to exhaust due to failure to provide the Court with sufficient information

to determine whether Plaintiff had fully exhausted his remedies (Document No. 55.)

On October 12, 2005 Dr. Turpin filed the instant Second Motion to Dismiss and on October 14, 2005 the remaining Defendants filed the instant Motion for Summary Judgment. On October 17, 2005 this Court directed the Plaintiff to file a response to Defendant Turpin's Motion to Dismiss within thirty day (Document No. 61). Thirty days have passed since the Court directed Plaintiff to file such a response and no response has been received by this Court. On October 28, 2005 this Court directed the Plaintiff to file a response to Defendants' Motion for Summary Judgment within thirty days (Document No 71.) On November 7, 2005 Plaintiff complied with the Court's Order by filing a response to Defendants' Motion for Summary Judgment (Document No. 73.)

In his Complaint filed on January 9, 2004, Plaintiff alleged that he filed a medical related grievance on December 1, 2003, but acknowledged that it had not completed the step two grievance review at the time of the filing of his Complaint. (Compliant, § V, Statement of Claim, ¶ 9.) Plaintiff failed to attach a copy of this grievance or any grievance to his Complaint. This grievance, which did not complete step three of the grievance process until February 6, 2004, focused on the alleged disposal of Plaintiff's personal property and destruction of Plaintiff's confidential medical records by Defendants Biddix, Johnson, Brendle, Poteat, Brown, Honeycutt[1], Mackinnon, and Cook.[2] Further, in Plaintiff's Motion for Preliminary Injunction filed January 9,

---

[1] The Court notes that Honeycutt was not named as a defendant in this lawsuit.

[2] This grievance, No. D3730-03, was filed by the Plaintiff with the Court on March 1, 2004 as a supplement to his complaint. Step Three of the grievance procedure for this grievance was not completed until February 6, 2004. See Ex. E to Defendants' Answer (Document No. 10.)

2004, Plaintiff admitted that he had not exhausted his administrative remedies prior to the filing of his Complaint. Plaintiff stated that he "is in the process of exhausting his available administrative remedies." (Document No. 2, pg. 3.)

Next, Plaintiff filed an "Emergency Grievance" dated December 11, 2003. In this grievance Plaintiff complained that Defendants Biddix and Brown along with other officers and administrative staff retaliated against him because of his race. This grievance was rejected by Defendant Cothron under DOC Division of Prisons policy, .0310(a)(6), the Grievance Review Procedure, because Plaintiff's grievance filed on December 1, 2003 had not completed Step Two review.[3]

Plaintiff then filed another "Emergency and Confidential" grievance on December 15, 2003. In this grievance Plaintiff complained that Defendant Brown and other correctional staff denied him adequate medical care. (Complaint, § V Statement of Claim, ¶ 6.) The Court notes that Plaintiff did not attach a copy of this grievance to his Complaint. However, Plaintiff alleges that on December 30, 2003, he received a response to this grievance in which defendant Rowland indicated that his grievance was not considered emergent, and he was advised to submit his grievance in accordance with the standard Administrative Remedy Procedures (Complaint, § V, Statement of Claim, ¶ 7.) Plaintiff did not allege in his Complaint that he subsequently submitted this grievance in accordance with the Standard Administrative Remedy Procedures and does not allege that he appealed this grievance through all three steps of the administrative remedy process.

---

[3] Plaintiff did not attach to his Complaint or Amended Complaint, nor has the Plaintiff filed with the Court a copy of another grievance that completed Step Three review prior to the filing of the Compliant, complaining that Defendants Biddix and Bworn along with other officers and administrative staff retaliated against him because of his race.

Instead, Plaintiff acknowledges in the Complaint that he has failed to exhaust the available administrative remedy procedure as to certain claims (Complaint, § V, Statement of Claim, ¶ 16, Exhaustion of Administrative Remedies.)

Plaintiff filed another "Emergency Grievance" dated December 19, 2003. In this grievance, Plaintiff complained about death threats and retaliation, naming Defendants Cothron, Twitty and Patrick. (See Exhibit F to Defendants' Answer.) On December 30, 2003, this "Emergency Grievance" was rejected by Defendant Sturgill under DOC Division of Prisons policy, .0310(a)(6), Grievance Review Procedure, because Plaintiff's previously filed grievance dated December 1, 2003 had not completed Step Two review. Plaintiff did not attach to the Complaint, Amended Complaint nor has Plaintiff filed with the Court a copy of another grievance that completed Step Three review prior to the filing of the Complaint, complaining about death threats and retaliation naming Defendants Cothron, Twitty and Patrick.

On January 13, 2004, Plaintiff filed another grievance. In this grievance Plaintiff attempted to appeal and challenge the disciplinary decision and penalties imposed by Defendant Bobo. (See Ex. G to Defendants' Answer.) On January 16, 2004 this grievance was rejected by Defendant Sturgill under DOC Division of Prisons Policy .0306(a)(3), Rejection of Grievances, because it was an attempt to appeal a disciplinary action.[4]

On January15, 2004 Plaintiff filed a grievance in which he complains about a persistent pattern of retaliation naming Defendants Bennett, Beck, Cothron, Patrick, Twitty, Biddix,

---

[4] Because this grievance was rejected for the administrative reason that it appealed a disciplinary action, Defendants are not arguing that Plaintiff failed to exhaust all available administrative remedies against Defendant Bobo as required by the Prison Litigation Reform Act of 1995.

Dotson, Sturgill, Duncan, Hanna, Randolph, Hughes, Owens and McGee (See Ex. H to Defendants' Answer.) This grievance was rejected on June 20, 2004 by Defendant Sturgill under DOC Division of Prisons policy .0306(b)(4), Rejection of Grievances, because it involved more than one incident. Plaintiff did not attach to the Compliant, Amended Complaint nor has Plaintiff filed with the Court a copy of another grievance that completed step Three review prior to the filing of the Complaint complaining about a persistent pattern of retaliation with respect to these Defendants.

On January 21, 2004, this Court directed the Plaintiff pursuant to 42 U.S.C. § 1997e, to provide proof of exhaustion of the administrative remedies available to him as to his claims in this matter. This Order provided that Plaintiff could do so by filing a sworn statement showing exhaustion or a copy of the grievance itself. The Order further provided that failure to comply within twenty days would result in dismissal of this action.

On February 3, 2004, Plaintiff filed a First Amended Complaint. Also, on February 3, 2004 Plaintiff filed a verified statement stating that he exhausted his administrative remedies. (Document No. 8.)

On February 14, 2004 Plaintiff filed another grievance in which he complained that Marion staff was not provided copies of an "Intelligence Project" report nor was Plaintiff provided with the Security Threat Group procedures. (See Ex. I to Defendants' Answer.) Step Three of this grievance was not completed until May 4, 2004.

On March 1, 2004, Plaintiff filed a copy of grievance no. D 3730-03-1239 presumably in an effort to show that this grievance had reached step three of the administrative remedy

procedure and that he had exhausted all available remedies as to the complaints it referenced.[5]

Plaintiff also filed a copy of a February 19, 2002 letter from Sue Medford regarding the procedure

for the submission of sick call requests, and a notice of policy change to allow for co-payments to

be collected from inmates for health care.[6]

On June 21, 2004, Plaintiff filed a notice of Administrative Remedy procedure in which he

alleges only that Dr. Samuel Dawkins[7] and the medical staff at Lanesboro Correctional Institution

failed to provide him with appropriate treatment for an abnormal protraction on his right foot and

hemorrhoids.

On July 2, 2004, Dr. Turpin filed his first Motion to Dismiss (Document No. 47). The

basis for this motion was Plaintiff's failure to provide the Court with proof of exhaustion of

available administrative remedies as to his claims against Dr. Turpin.

On September 7, 2004, Plaintiff filed a letter directed to Judge Mullen regarding the

"presentation of Islamic literature by the Honorable Elijah Muhammad, founder of the Nation of

Islam in the Western Hemisphere." In this letter, Plaintiff provided the Court with a copy of

Islamic literature which was allegedly classified by prison personnel as Security Threat Group

material. He also attached a copy of his January 13, 2004 grievance pertaining to this literature.

This September 7, 2004 letter and attached grievance do not allege any facts pertaining to the

issue of whether Plaintiff had exhausted the available administrative remedies.

---

[5] The grievance was taken through Step Three of the Administrative Remedy Procedure, but was not completed until February 6, 2004. (See Ex. E. To Defendants' Answer.)

[6] The Court notes that letter was not an official "grievance."

[7] The Court notes that Dr. Dawkins was not named as a defendant in this lawsuit.

On December 9, 2004, Plaintiff filed a letter with the clerk enclosing an October 19, 2004 grievance and a December 6, 2004 letter addressed to Defendant Bennett. The letter refers only to the alleged confiscation of Plaintiff's Koran.[8]

On October 12, 2005, Becky Thompson, a member of the staff of the North Carolina Inmate Grievance Resolution Board ("IGRB") in Raleigh, North Carolina signed an affidavit pertaining to the issue of whether Plaintiff had appealed any grievance regarding Dr. Turpin to the IGRB. (Thompson Affidavit, ¶ 1, attached to Defendant Turpin's Second Motion to Dismiss.) The IGRB processes final appeals of administrative grievances filed by inmates in the custody of the Department of Correction. Ms. Thompson checked the IGRB's records and she found no record of any appeal to the IGRB by Inmate Royster related to allegations against Dr. Turpin. (Thompson Affidavit, ¶ 2.)

On October 19, 2005 Becky Thompson, a member of the staff of the North Carolina Inmate Grievance Resolution Board ("IGRB") in Raleigh, North Carolina signed a second affidavit pertaining to the issue of whether Plaintiff had appealed any grievance to Step Three from November 1, 2003 through February 14, 2004. Her affidavit reveals that grievance D-3730-03-1239, dated December 1, 2003 was appealed to the Board on January 12, 2004 and grievance D-3730-04-1029 dated February 14, 2004 was appealed to the Board on March 25, 2005.

On September 13, 2005, this Court entered an Order denying Defendants' motions to dismiss without prejudice to the Defendants filing a new motion to dismiss which specifically

---

[8] On October 11 2004, Plaintiff sent a letter to the Clerk of Court indicating that he instructed prison officials to mail his copy of the Holy Koran to this Court for evidentiary purposes. The Court directs Plaintiff to designate a family member or other such person to whom the Court can return Plaintiff's Koran. Plaintiff shall provide the full name and mailing address of such designee within thirty (30) days of the date of this Order.

addressed Plaintiff's claims and whether he had exhausted such claims.

Defendant, Dr. Turpin, filed the instant motion to dismiss on October 13, 2005, based on Plaintiff's failure to exhaust his administrative remedies with respect to the claim of deliberate indifference to Plaintiff's medical needs. Plaintiff dit not file a response to Defendant Turpin's Motion to Dismiss despite being directed to do so by this Court. For the reasons stated herein, Defendant Turpin's Second Motion to Dismiss is Granted.

The remaining Defendants filed the instant Motion for Summary Judgment on October 24, 2005. For the reasons stated herein, Defendants' Motion for Summary Judgment is also Granted.

## Analysis

### 1. Failure to Exhaust

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust "such administrative remedies as are available" before suing over prison conditions. Specifically, 42 U.S.C. § 1997e(a) states, 'no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (West 2003). There is no doubt that the PLRA's exhaustion requirement is mandatory. See Anderson v. XYZ Correctional Heath Services, 407 F.3d 674, 676-77 (4th Cir. 2005) citing Porter v. Nussle, 534 U.S. 516, 524 (2002) ("once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy and effective. The effectiveness of the administrative procedure to produce the inmate's requested remedy and/or the alleged futility of the administrative remedies

to produce the inmate's requested remedy are not exceptions to the exhaustion of administrative remedies requirement under the Act.  Taylor v. Dr. Barnett, 105 F. Supp. 2d 483, 486 (E.D.Va 2000) (courts should focus on availability and not effectiveness of remedies); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000) (there is no futility exception to Section 1997e(a)).  Even when the prisoner seeks relief not available in the grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  An "inmate cannot simply fail to file a grievance or abandon the process before completion and claim he has exhausted his remedies or that it is futile for him to do so because his grievance is no time-barred under the regulations." Hartsfield v. Vidor, 199 F.3d 305, 309 (6th Cir. 1999) citing Wright v. Morris, 111 F.3d 414, 417 n.3 (7th Cir.) cert. denied, 522 U.S. 906 (1997).

A prisoner does not comply with the mandatory requirements of 42 U.S.C. § 1997e(a) by exhausting his remedies during the course of litigation; exhaustion must occur prior to the filing of the lawsuit or it must be dismissed.  Anderson v. XYZ Correctional Health Serv., 407 F.3d 674, 683 (4th Cir. 2005).  Therefore, when considering a motion to dismiss for failure to exhaust, the district court must determine whether exhaustion was complete at the time of filing, not at the time when the court is rendering its decision on the Motion to Dismiss.  Johnson v. Jones, 340 F.3d 624 (8th Cir. 2003).

According to the Administrative Remedy Procedure implemented by the North Carolina Department of Corrections, there are three steps an inmate must follow to exhaust a grievance within the prison system.  Under step 1, an inmate may submit an initial written grievance which is reviewed by a screening officer, who determines whether it should be accepted, rejected or returned.  If the grievance is accepted, it is forwarded to a staff member who prepares a response.

If the inmate is not satisfied with the response generated at step 1, the inmate may request relief from the Facility Superintendent (step 2) by noting his decision to appeal on the grievance response form within twenty-four hours of receipt. If an appeal is noted, the Facility Superintendent or a staff member investigates and renders a decision. An inmate may submit a new grievance only after the initial grievance has completed step 2; if the initial grievance has not completed step 2, the new grievance will be rejected. A grievance may also be rejected if the inmate has requested a remedy for more than one incident.

If an inmate is not satisfied with the decision rendered by the Facility Superintendent, the inmate can initiate step 3, by noting an appeal within 24 hours of receipt of the decision. If an appeal is noted, the Facility Superintendent's decision is forwarded to the Inmate Grievance Resolution Board and in Inmate Grievance Examiners ("IGE") will review the grievance. The IGE will either order such relief as is appropriate or deny the grievance and its decision is forwarded to the Director of Prisons for review. The Director of Prisons notes any comments and forwards the grievance to the Secretary of Correction, who reviews the comments and then approves the IGE's decision or makes a finding that the relief ordered is not appropriate. The Secretary's decision is then delivered to the inmate by the IGRB. The decision by the IGRB and its delivery to the inmate constitutes the final step of the Administrative Remedy procedure (See Administrative Remedy Procedure attached to Defendant Turpin's Motion for Summary Judgment as Ex. 1.).

It is clear that at the time Plaintiff filed his Complaint, he had not exhausted his administrative remedies. Further, at least with respect to Defendant Dr. Turpin, Plaintiff still has not exhausted his administrative remedies. Plaintiff has alleged no effort and provided no

evidence that he submitted any grievance in accordance with the Administrative Remedy procedures relating to Dr. Turpin's alleged deliberate indifference to his serious medical needs. In fact, Plaintiff did not file a response to Defendant Turpin's Motion to Dismiss despite being directed to do so by this Court.

Because the PLRA requires that an inmate exhaust his administrative remedies before suing over prison conditions and Plaintiff has not exhausted his administrative remedies as to Defendant Turpin, Defendant Turpin's Motion to Dismiss is Granted.

With respect to the remaining Defendants, according to Ms. Becky Thompson, a member of the staff of the North Carolina Inmate Grievance Resolution Board, from November 1, 2003 through February 14, 2004, Plaintiff appealed two grievances to Step Three of the Administrative Remedy Procedure. The first, grievance D-3730-03-1239, filed December 1, 2003 and appealed to the Board on January 12, 2004[9]. This grievance was not completed until February 6, 2004. (See Ex. E to Defendants' Answer.) This was twenty-eight days after Plaintiff filed his Complaint and three days after Plaintiff filed his Amended Complaint. The second, grievance D-3730-04-1029, filed February 14, 2004 and appealed to the Board March 25, 2005[10]. The second grievance was not completed through Step Three until May 4, 2004, which was more than ninety days after Plaintiff filed his Complaint and thirty days after Plaintiff filed his Amended Complaint. Therefore, neither grievance was completed through Step Three prior to the filing of the

---

[9] The Court notes that although Ms. Thompson's affidavit states that grievance D-3730-03-1239 was appealed to the Board on January 12, 2004, the document itself is stamped "received" January 21, 2004. See Ex. E to Defendants' Answer.

[10] The Court notes that although Ms. Thompson's affidavit states that grievance D-3730-04-1029 was appealed to the Board on March 25, 2005, the document itself states that the appeal was received on April 15, 2004 and decided on May 4, 2004. See Ex. I to Defendants' Answer.

Complaint on January 9, 2004 or filing of the Amended Complaint on February 3, 2004.

Therefore, Plaintiff's entire Complaint and Amended Complaint must be dismissed for failure to exhaust his administrative remedies.

**2. Failure to State a Claim for Relief as to Dr. Turpin**

Even if this Court were to conclude that Plaintiff had exhausted his administrative remedies as to Dr. Turpin, which he did not, Plaintiff has not even stated a cause of action against Dr. Turpin. According to Plaintiff's Complaint, he alleged that '[o]n 12 December 2003, defendant Turpin informed plaintiff that he could not provide plaintiff with any medical treatment because of the absence of his medical records (volumes 2 and 3 or the most recent) and that defendant Turpin lacked sufficient knowledge of plaintiff's medical history." (Complaint, ¶ 4.) This is the only reference to Dr. Turpin in Plaintiff''s Complaint and Amended Complaint. Plaintiff does not explain the circumstances of his visit with Dr. Turpin in any way nor does not allege what his specific medical need was on December 12, 2003 or what injury he sustained as a result of Dr. Turpin's alleged refusal to treat him on December 12, 2003.

A prisoner makes out a claim under the Eighth Amendment if he can establish that prison medical staff was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To be deliberately indifferent, a defendant must know of and disregard an objectively serious condition, medical need, or risk of harm. Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). Other than the one allegation as to Defendant Dr. Turpin cited above, Plaintiff does not mention Dr. Turpin or explain the circumstances surrounding his visit with Dr. Turpin. Plaintiff has not articulated any facts which support a claim that Dr. Turpin was deliberately indifferent to his medical needs. Further, at most Plaintiff's allegations could be

13

interpreted as he and Dr. Turpin disagreeing about Plaintiff's medical records. However, disagreements between an inmate and a physician do not state a cause of action under § 1983. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). For the reasons stated, Plaintiff has not stated a cause of action against Dr. Turpin and Plaintiff's claim against Dr. Turpin is dismissed with prejudice.

### 3. Failure to State a Claim as to Defendant Medford

Even if this Court were to conclude that Plaintiff had exhausted his administrative remedies as to Defendant Medford, a nursing supervisor at Marion Correctional Institution, which he did not, Plaintiff has not even stated a cause of action against Defendant Medford. According to Plaintiff's Complaint, he alleged that '[o]n 2 December 2003, defendant Medford informed plaintiff that her investigation revealed that plaintiff's medical records are "missing" and that "state law" prohibits the creation of a "dummy record." Defendant Medford also informed plaintiff that this facility do not provide intial [sic]/intake health care screenings of inmates because of "inadequate medical staff."'" (Complaint, ¶ 5.)

As stated above, a prisoner makes out a claim under the Eighth Amendment if he can establish that prison medical staff was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To be deliberately indifferent, a defendant must know of and disregard an objectively serious condition, medical need, or risk of harm. Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). Other than the one allegation as to Defendant Medford cited above, Plaintiff does not mention Defendant Medford or explain the circumstances surrounding his conversation with Defendant Medford. Plaintiff does not even state whether he went to see Defendant Medford for a medical appointment. Plaintiff has not articulated any facts which

support a claim that Defendant Medford was deliberately indifferent to his medical needs. Further, at most Plaintiff's allegations could be interpreted as he and Defendant Medford disagreeing about Plaintiff's medical records. However, disagreements between an inmate and a physician, or in this case a nurse supervisor, do not state a cause of action under § 1983. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). For the reasons stated, Plaintiff has not stated a cause of action against Defendant Medford and Plaintiff's claim against Defendant Medford is dismissed with prejudice.

**4. Failure to State a Claim as to Defendant Rowland**

Even if this Court were to conclude that Plaintiff had exhausted his administrative remedies as to Defendant Rowland, the Special Assistant Director of the North Carolina Department of corrections, which he did not, Plaintiff has not even stated a cause of action against Defendant Rowland. According to Plaintiff's Complaint, he alleged that Defendant Rowland concluded that Plaintiff's "emergency grievance" filed on December 15, 2003 was not life threatening and did not constitute an emergency. Plaintiff contends that Defendant Rowland's response constitutes deliberate indifference to his serious medical needs.

Plaintiff's "emergency grievance"" at issue had to do with other named defendants confiscating and destroying Plaintiff's medical records upon his arrival at Marion Correctional Institution. The grievance does not specify what his serious medical needs were or what harm he has suffered. Plaintiff's allegation that Defendant Rowland's response to his grievance constitutes deliberate indifference to his serious medical needs is conclusory and does not state a claim for relief. Indeed, in order to survive a review for factual frivolousness, a plaintiff proceeding in forma pauperis, such as the instant plaintiff, cannot rely merely on conclusory allegations, to state

a claim for relief. <u>Cochran v. Morris</u>, 73 F. 3d 1310, 1317 (4th Cir. 1996). Therefore, the claim

as to Defendant Rowland is dismissed with prejudice.

**5. Claims as to Defendants Bennett[11], Beck[12] and Harkleroad**[13]

This Court has reviewed Plaintiff's Complaint and Amended Complaint and can only

conclude that Defendants Bennett, Beck and Harleroad have been included in this lawsuit on

some theory of respondeat superior. The Court cautions Plaintiff that the doctrine of respondeat

superior is generally inapplicable to § 1983 suits. <u>Monell v. Department of Social Services</u>, 436

U.S. 658, 694 (1978). If Plaintiff chooses to refile a lawsuit **after he has completed the**

**administrative remedy procedure as to all defendants**, Plaintiff should be mindful of the law

regarding respondeat superior. The Court also puts Plaintiff on notice that it is well aware of all

the lawsuits he has filed in this district and in the Eastern District of North Carolina. Clearly,

given that some of Plaintiff's numerous cases were dismissed, in whole or in part, as frivolous and

Plaintiff voluntarily dismissed other cases, in whole or in part, leads this Court to the obvious

conclusion that Plaintiff files lawsuits first and thinks second. This Court is overwhelmed by cases

with allegations of legitimate constitutional causes of action and it is irresponsible of the Plaintiff

to clog "the system" with frivolous cases and/or cases he later seeks to voluntarily dismiss.

Moreover, this Court advises Plaintiff that should he choose to file any further lawsuits he must

choose his claims and whom he names as defendants carefully. Title 28 U.S.C. § 1915 "accords

judges not only the authority to dismiss a claim based on an indisputably meritless legal theory,

---

[11] Defendant Boyd Bennett is the North Carolina Director of the Division of Prisons

[12] Defendant Beck is the Secretary of the Department of Corrections.

[13] Defendant Harkleroad is the Superintendent at Marion Correctional Institution

but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 324-25 (1989).

**6. Claim Regarding Invalid Disciplinary Procedures Fails to State a Claim**

In his Amended Complaint, Plaintiff alleges that Defendant Bobo's disciplinary decision and the penalties imposed violated Plaintiff's First, Eighth and Fourteenth Amendment rights. Plaintiff contends that at his January 7, 2004 disciplinary hearing, Defendant Bobo placed Plaintiff "in a Catch-22 situation" by asking Plaintiff only whether he possessed the Islamic literature at issue and not allowing Plaintiff to address whether the literature in question met the Security Threat Group ("STG") criteria. Defendant Bobo explained that the purpose of the hearing was not to address whether the literature violated the policy but to allow Plaintiff to plead guilty or not guilty of possessing the literature. According to the Plaintiff, it had already been determined that the literature in question met the criteria of STG criteria. Plaintiff, "left with no choice but to stand up firmly for his religious faith and accept responsibility exclusively for possessing the aforesaid Islamic literature which he wholeheartedly embrace, pled guilty to having been "found in possession of Islamic literature."" Despite having pled guilty to possessing the Islamic literature at issue, Plaintiff has requested declaratory relief and monetary damages. Specifically, Plaintiff requested that he be allowed to possess the confiscated religious materials, that Defendant Bobo's disciplinary decision and penalties be vacated, that the Nation of Islam be recognized as a legitimate religious organization and that he receive monetary damages.

Plaintiff is essentially arguing that if the materials that he possessed had not been identified as Security Threat Group materials, he would not have been found guilty. Therefore, Plaintiff is

requesting relief, if granted, that renders the punishment imposed invalid.

In Edwards v. Baliosk, 520 U.S. 641 (1997), the Court considered "whether a claim for damages and declaratory relief brought by a state prisoner challenging the validity of procedures used to deprive him of good time credits is cognizable under § 1983. Id. at 643. Inmate Balisok "requested a declaration that procedures employed by state officials violated due process, compensatory and punitive damages for the use of the unconstitutional procedures, and injunction to prevent future violations, and any other relief the court deem[ed] just and equitable' but did not request restoration of lost good time credits. Id. at 643-44. Balisok's principle allegations were that the hearing officer "concealed exculpatory witness statements and refused to ask specific questions of requested witnesses." Id. at 644. The Court noted "critical differences" between Balisok's claims and those in Heck v. Humphrey, 512 U.S. 377 (1994):

> [Balisok], in his amended complaint, limited his request to damages for depriving him of good time credits without due process, not for depriving him of good time credits undeservedly as a substantive matter. That is to say, his claim posited that the procedure was wrong, but not necessarily that the result was. The distinction between these two sorts of claims is clearly established in our case law, as is the plaintiff's entitlement to recover at least nominal damages under § 1983 if he proves the former one without also proving the latter one.

Id. at 645. The Court concluded that even a claim for declaratory relief and monetary damages based on allegations of deceit and bias by the decision maker is not cognizable under Section 1983 if it necessarily implies invalidity of the punishment imposed. However, a request for an injunction requiring that in the future prison officials would be required to date stamp witness statements at the time received would not imply invalidity of a previous loss of good time credits and could "properly be brought under § 1983." Id. at 648.

Similarly, Plaintiff's requested relief - - that the Court allow him to possess the Islamic

18

literature, that Defendant Bobo's disciplinary decision and penalties be vacated, that the Nation of Islam be recognized as a legitimate religious organization and that he receive monetary damages - necessarily imply invalidity of the punishment imposed. Therefore, Plaintiff is requesting relief, if granted, that renders the punishment imposed invalid.

For the above stated reasons, Plaintiff's claim regarding the disciplinary decision and related penalties is dismissed with prejudice. Additionally, because the allegations against Defendant Bobo only stem from this claim, Defendant Bobo is dismissed from this lawsuit with prejudice.

**THEREFORE, IT IS HEREBY ORDERED** that:

1) Defendant Dr. Turpin's Motion to Dismiss (Document No. 58) is Granted and Plaintiff's Complaint as to Dr. Turpin is Dismissed with prejudice for failure to exhaust his claim against Dr. Turpin and for failure to state a claim against Dr. Turpin;

2) Defendant Turpin's Motion for an Enlargement of Time (Document No. 74) is Denied as moot;

3) Defendants' Motion for Summary Judgment (Document No. 68) is Granted;.

4) Plaintiff's Complaint as to Defendant Medford is dismissed with prejudice for failure to state a claim for relief;

5) Plaintiff's Complaint as to Defendant Rowland is dismissed with prejudice for failure to state a claim for relief;

6) Plaintiff's Complaint as to Defendant Bobo is dismissed with prejudice for failure to state a claim for relief;

7) Plaintiff's claim regarding Defendants' disciplinary decision and related penalties

identified in his Amended Complaint as issue I is dismissed with prejudice pursuant to <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997).

8) Plaintiff's Complaint as to Defendants Bennett, Harkleroad, Biddix, Brown, Poteat, Brendle, Johnston, MacKinnon, Cook, Corn, Cothron, Twitty, Patrick, and Beck is dismissed without prejudice for failure to exhaust.

9) Plaintiff is directed to designate a family member or other person to whom this Court can return Plaintiff's Koran within thirty (30) days of the date of this Order. Plaintiff must provide a full name and address of the person designated.

**Signed: December 13, 2005**

Graham C. Mullen
Chief United States District Judge